UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION


MELIESA BURGESS,

    Plaintiff,


-vs-

GOLIATH FINANCIAL INC.,
    d/b/a *Harbourside Financial,*
        *Harborside Financial,*
        *Harfin,*
        *Skyline Distribution,*
        *Westpointe Group*,
        *Johnson & Associates,*
        *Goliath Financial,* and,
        *Goliath Financial Corporation*
USI SOLUTIONS INC.,
    d/b/a *Unitrust Solutions Inc.,* and,
        *Thomas Joseph & Associates, Inc.*
JONATHAN SILVA,
HUME MILLER,
MARY THERESA WEIL,
LARRY WEIL, and,
BELINDA LINTON-WEEDON,

    Defendants.

Case No.
Hon.


## **COMPLAINT & JURY DEMAND**

*Plaintiff, Meliesa Burgess States the Following Claims for Relief:*

### **JURISDICTION**

1.    This court has jurisdiction under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §1692 *et. seq.*

2.     The claims presented under the FDCPA present federal questions for purposes of 28 U.S.C. §1331.

3.     This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

4.     As set forth below, the parties to this action are diverse and the amount in controversy exceeds $75,000 and therefore this Court also has jurisdiction over the claims in this case under 28 U.S.C. § 1332.

<u>**PARTIES**</u>

5.     The Plaintiff to this lawsuit is Meliesa Burgess ("Ms. Burgess" or "Plaintiff"), an individual who resides in Lenawee County in Michigan.

6.     The Defendants to this lawsuit are:

   a.     Goliath Financial Inc. ("Goliath") which does business as *Harbourside Financial*, *Harborside Financial*, *Harfin*, *Skyline Distribution*, *Westpointe Group*, *Johnson & Associates*, *Goliath Financial*, and *Goliath Financial Corporation*, is a Delaware corporation, registered in California and doing business in Michigan.  Goliath Financial Inc.'s registered principal executive office address with the State of California is 3281 E. Guasti Road, Ontario, CA 91761.  Goliath Financial Inc.'s Chief Executive Officer, Secretary, Chief Financial Officer, and agent

for service of process in California is Jonathan Silva at 23484 Calle Pepita Rd, Corona, CA 92883.

b.    USI Solutions Inc. ("USI") which does business as *Unitrust Solutions, Inc.*, and *Thomas Joseph & Associates, Inc.*, is a Delaware corporation, registered in multiple states including Pennsylvania, Florida, and Michigan and doing business in Michigan.  USI's Chief Compliance Officer is Nancy Coughlin, Charles Riter is the Vice President of Compliance, Larry Weil is the Treasurer/Managing Member, Jill Cilmi is the Vice President, Mary Theresa Weil is the Secretary/President/Director/Co-Owner, and Belinda Linton-Weedon is the Co-Owner.  According to USI Solutions 2018 Foreign Profit Corporation Annual Report filed with the State of Pennsylvania, 408 Mill Street Bristol, PA 19007 is its current mailing address and its Current Registered Agent is Corporation Service Company at 1201 Hays Street, Tallahassee FL 32301.  According to USI Solutions 2018 Annual Report filed with the State of Michigan is CSC-Lawyers Incorporating Service (Company) at 601 Abbot Road, East Lansing, MI 48823.

c.    Jonathan Silva ("Mr. Silva"), in his capacity as CEO/Secretary/CFO of Goliath Financial Inc.  Mr. Silva regularly collects debts and is a debt

collector for the purposes of the FDCPA, 15 U.S.C. §1692a, manages the operations of Goliath Financial Inc. and oversees collection activity of Goliath Financial Inc., designed and drafted the procedures and tactics to collect debts on behalf of Goliath Financial Inc., benefitted from unlawful collection practices of Goliath Financial Inc. in the form of collections, controls the day-to-day operations of Goliath Financial Inc., indirectly engaged in the collection of debts from Ms. Burgess, and engaged in the collection of time-barred debts owed to another using instrumentalities of interstate commerce to deliver threatening voicemail messages to Ms. Burgess.

d.     Hume     Miller     ("Mr.     Miller"),     in     his     capacity     as Owner/Operator/Principal of Goliath Financial Inc.   Mr. Miller regularly collects debts and is a debt collector for the purposes of the FDCPA, 15 U.S.C. §1692a, manages the operations of Goliath Financial Inc. and oversees collection activity of Goliath Financial Inc., designed and drafted the procedures and tactics to collect debts on behalf of Goliath Financial Inc., benefitted from unlawful collection practices of Goliath Financial Inc. in the form of collections, controls the day-to-day operations of Goliath Financial Inc., indirectly engaged in the collection of debts from Ms. Burgess, and engaged in the

collection of time-barred debts owed to another using instrumentalities of interstate commerce to deliver threatening voicemail messages to Ms. Burgess.

e.   Mary Theresa Weil ("Ms. Weil"), in her capacity as Secretary/President/Director/Co-Owner of USI Solutions Inc.  Ms. Weil regularly collects debts and is a debt collector for the purposes of the FDCPA, 15 U.S.C. §1692a, manages the operations of USI Solutions Inc. and oversees collection activity of USI Solutions Inc., designed and drafted the procedures and tactics to collect debts on behalf of USI Solutions Inc., benefitted from unlawful collection practices of USI Solutions Inc. in the form of collections, controls the day-to-day operations of USI Solutions Inc., indirectly engaged in the collection of debts from Ms. Burgess, and engaged in the collection of time-barred debts owed to another using instrumentalities of interstate commerce to deliver threatening voicemail messages to Ms. Burgess.

f.   Larry Weil ("Mr. Weil"), in his capacity as Treasurer/Managing Member of USI Solutions Inc.  Mr. Weil regularly collects debts and is a debt collector for the purposes of the FDCPA, 15 U.S.C. §1692a, manages the operations of USI Solutions Inc. and oversees collection activity of USI Solutions Inc., designed and drafted the procedures and

tactics to collect debts on behalf of USI Solutions Inc., benefitted from unlawful collection practices of USI Solutions Inc. in the form of collections, controls the day-to-day operations of USI Solutions Inc., indirectly engaged in the collection of debts from Ms. Burgess, and engaged in the collection of time-barred debts owed to another using instrumentalities of interstate commerce to deliver threatening voicemail messages to Ms. Burgess.

g.  Belinda Linton-Weedon ("Ms. Weedon"), in her capacity as Co-Owner of USI Solutions Inc.  Ms. Weedon regularly collects debts and is a debt collector for the purposes of the FDCPA, 15 U.S.C. §1692a, manages the operations of USI Solutions Inc. and oversees collection activity of USI Solutions Inc., designed and drafted the procedures and tactics to collect debts on behalf of USI Solutions Inc., benefitted from unlawful collection practices of USI Solutions Inc. in the form of collections, controls the day-to-day operations of USI Solutions Inc., indirectly engaged in the collection of debts from Ms. Burgess, and engaged in the collection of time-barred debts owed to another using instrumentalities of interstate commerce to deliver threatening voicemail messages to Ms. Burgess.

<u>VENUE</u>

7.     The transactions and occurrences which give rise to this action occurred in Lenawee County in Michigan.

8.     Venue is proper in the Eastern District of Michigan.

<u>FACT SUMMARY</u>

9.     The nexus for all of the collection activity at issue is a Chase credit card debt.

10.    The Chase credit card was issued by Chase Bank, N.A.

11.    Chase Bank, N.A. maintains its headquarters Delaware.

12.    The Chase credit card selected as its choice of law, the law of Delaware, including its rates of interest and statute of limitations.

13.    Payments on the Chase credit card were due in Delaware, and therefore any breach of contract for nonpayment occurred in Delaware.

14.    The statute of limitations applicable to the Chase credit card is Delaware's three-year limitations period.

15.

16.    Plaintiff originally stopped making payments due to loss of employment, sometime in 2005.

17.    She resumed making payments sometime in 2009 but stopped again around October of that same year.

18.    More than *seven years later*, and sometime in April 2017, Defendants began

calling Plaintiff to collect the debt.

19. Defendants utilized a string of aliases and coerced Ms. Burgess to agree to a payment plan on a time-barred and illegally over-inflated debt.

20. Defendants also misrepresented their authority to engage in any collection of the debt.

21. Defendants deliberately refused her requests for validation of the debt and purposefully failed to tender the required debt collection notices.

22. Defendants engaged in an unauthorized electronic funds transfer ("EFT") from Ms. Burgess' asset bearing account ("bank account").

23. Defendants' conduct not only caused the overdraft of Ms. Burgess' bank account, but their conduct was abusive, harassing, deceitful, threatening, and caused Ms. Burgess a great deal of stress, anxiety and fear.

<u>**GENERAL ALLEGATIONS: USI SOLUTIONS INC.**</u>

24. Sometime prior to June 11, 2009, Chase sold a debt allegedly owed by Ms. Burgess to Unifund, a buyer of bad debt, and debt collector for purposes of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a.

25. On or about June 11, 2009, Unifund sold the debt to Account Portfolio Mgmt, LLC. a buyer of bad debt, and debt collector for purposes of the FDCPA, 15 U.S.C. § 1692a

26. On or about June 11, 2009, USI Solutions Inc. ("USI") was engaged to collect

a debt allegedly owed by Ms. Burgess.  At all relevant times, USI Solutions Inc. does business as several different entities and -- in the ordinary course of its business -- regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

27.    At all relevant times, Mary Theresa Weil, Larry Weil, and Belinda Linton-Weedon operate a common law partnership.

28.    At all relevant times, USI Solutions Inc. and the entities through which it does business, and its agents acted under the direction of Ms. Weil.

29.    At all relevant times, USI Solutions Inc. and the entities through which it does business, and its agents acted under the direction of Mr. Weil.

30.    At all relevant times, USI Solutions Inc. and the entities through which it does business, and its agents acted under the direction of Ms. Weedon.

31.    Ms. Weil established the policies, procedures, and practices of USI Solutions Inc. in her capacity as Secretary/President/Director/Co-Owner of USI.

32.    Mr. Weil established the policies, procedures, and practices of USI Solutions Inc. in his capacity as Treasurer/Managing Member of USI.

33.    Ms. Weedon established the policies, procedures, and practices of USI Solutions Inc. in her capacity as Co-Owner of USI.

34.    Michael Lennon ("Mr. Lennon") is an employee and/or agent of USI Solutions Inc.

35.   Larry Dupont ("Mr. Dupont") is an employee and/or agent of USI Solutions Inc.

36.   USI Solutions Inc. and all of the entities through which it does business, and its employees and/or agents are debt collectors under the FDCPA, 15 U.S.C. §1692(6).

37.   USI Solutions Inc. and all of the entities through which it does business are "collection agencies" under the Michigan Occupational Code, M.C.L. §399.902(b); alternatively, they are each a "regulated person" under the Michigan Regulated Collection Practices Act, M.C.L. § 445.251(g)(xi).

## GENERAL ALLEGATIONS: GOLIATH FINANCIAL INC.

38.   On or about January 1, 2017, Goliath Financial Inc. ("Goliath") was engaged to collect a debt allegedly owed by Ms. Burgess.

39.   Alternatively, on or about January 1, 2017, Goliath Financial Inc. ("Goliath") purchased a debt allegedly owed by Ms. Burgess. At all relevant times, Goliath Financial Inc. does business as several different entities and -- in the ordinary course of its business -- regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

40.   At all relevant times, Jonathan Silva and Hume Miller operate a common law partnership.

41.   At all relevant times, Goliath Financial Inc. and the entities through which it

does business, and its agents acted under the direction of Mr. Silva.

42. At all relevant times, Goliath Financial Inc. and the entities through which it does business, and its agents acted under the direction of Mr. Miller.

43. Mr. Silva established the policies, procedures, and practices of Goliath Financial Inc. in his capacity as CEO/Secretary/CFO of Goliath Financial Inc.

44. Mr. Miller established the polices, procedures, and practices of Goliath Financial Inc. in his capacity as Owner/Operator/Principal of Goliath Financial Inc.

45. Monica Johnson ("Ms. Johnson") is an employee and/or agent of Goliath Financial Inc. and the entities through which it does business.

46. James Lawson ("Mr. Lawson") is an employee and/or agent of Goliath Financial Inc. and the entities through which it does business.

47. Amanda Doe ("Ms. Doe") is an employee and/or agent of Goliath Financial Inc. and the entities through which it does business.

48. Alexander Doe ("Mr. Doe") is an employee and/or agent of Goliath Financial Inc. and the entities through which it does business.

49. Goliath Financial Inc. and all of the entities through which it does business, and its employees and/or agents are debt collectors under the FDCPA, 15 U.S.C. §1692(6).

50. Goliath Financial Inc. and all of the entities through which it does business

are "collection agencies" under the Michigan Occupational Code, M.C.L. §399.902(b); alternatively, they are each a "regulated person" under the Michigan Regulated Collection Practices Act, M.C.L. § 445.251(g)(xi).

## DEBT COLLECTION CONDUCT: SPRING 2017

51.  On or about April 12, 2017, Amanda of Goliath Financial Inc. doing business as Westpointe Group called Ms. Burgess to collect a First USA Bank NA debt.

52.  Ms. Burgess told Amanda Doe ("Ms. Doe") that she didn't recognize the debt.

53.  During that call, Ms. Doe, later told Ms. Burgess that the debt originated from a 2005 Chase credit card account.

54.  Ms. Doe also stated that the balance on the Chase credit card account was $6,000.

55.  Ms. Burgess told Ms. Doe that she did not owe $6,000 to Chase.

56.  Ms. Burgess told Ms. Doe that sometime in 2005 she did have a Chase credit card, but the credit limit was between $300-$500.

57.  Ms. Doe told Ms. Burgess that the $6,000 balance was the product of "late charges".

58.  Ms. Doe told Ms. Burgess she owed $6,000 and needed to make payment arrangements immediately or the balance would continue to climb.

59.  Ms. Doe threatened Ms. Burgess with a lawsuit if she didn't agree to make payment arrangements immediately.

60. Ms. Burgess asked Ms. Doe to send her a written validation of the debt.

61. On April 12, 2017, Ms. Doe emailed Ms. Burgess and directed her to print and sign an "authorization letter" and return it "within the hour" to fax number (562) 286-8009.

62. Ms. Doe emailed Ms. Burgess from email address amanda@bsmteam.com and the subject line of the email was "WPG Settlement Letter."

63. Ms. Burgess responded to the email that she did not owe $6,000 for a Chase credit card account and again requested validation of the debt.

64. Ms. Doe failed to send the requested debt validation or otherwise respond to Ms. Burgess' request to establish the validity of the debt or otherwise send proof of the verification of the debt from the creditor.

### DEBT COLLECTION CONDUCT: MARCH 1, 2018 – MARCH 8, 2018

65. On March 1, 2018, Ms. Burgess' sister-in-law and also her mother-in-law received a phone call from someone representing himself to her as "Alexander" ("Mr. Doe") looking for Ms. Burgess.

66. Mr. Doe told Ms. Burgess' sister-in-law that he was looking for Ms. Burgess to resolve a debt she owed and to avoid any further consequence.

67. That same day, Mr. Doe left a voicemail for Ms. Burgess and communicated the following:

*This message is intended for Meliesa Burgess. My name is Alexander. I'm calling today in reference to a complaint that has been forwarded*

*to my office, if you would like to discuss the pending actions that have been filed against you or if you have any questions or concerns regarding your file, you must contact the office immediately at (855) 818-2041 and you must refer to file number 627294-01. Unfortunately, failure to respond may result in the office proceeding without your consent.[1]*

68.   On that same day, Ms. Burgess called phone number (855) 818-2041 and spoke to someone representing herself to Ms. Burgess as Monica Johnson ("Ms. Johnson") and communicating that her direct phone number was (909) 218-3198.

69.   During that call, Ms. Johnson represented that she worked for Johnson & Associates and that she was collecting a $6,000 debt.

70.   Ms. Johnson threatened Ms. Burgess with a lawsuit if she did not enter into a payment arrangement immediately.

71.   Ms. Johnson refused to send written validation of the debt.

72.   Ms. Johnson insisted that Ms. Burgess provide payment credentials over the phone to stop the lawsuit.

73.   Ms. Johnson sent Ms. Burgess an email with the subject line of "Settlement Agreement", from email address mxj@associatesadmin.com and directed Ms. Burgess to sign a document linked to the email.

74.   Ms. Burgess did not execute the "Settlement Agreement".

---

[1] Plaintiff has this voicemail and will produce the same to Chambers upon request.

75.  That same day, Ms. Burgess called phone number (888) 384-8134 again and discovered that phone number led to a call center where the respondents merely transferred the calls, based on a file number, to particular individuals and knew nothing about the entities to which they were transferring calls, not even the entity names.

76.  That same day, Ms. Burgess called Ms. Johnson's direct line and told her that she wanted more time to investigate the validity of the alleged debt and Johnson & Associates.

77.  Ms. Johnson agreed to defer the first electronic fund transfer from Ms. Burgess' bank account to March 9, 2018.

78.  That same day, Ms. Burgess called Chase Bank who told her that the Chase credit card debt was sold to Unifund and that their phone number was (888) 384-8134.

79.  That same day, Ms. Burgess called (888) 384-8134 and spoke to Unifund CCR Partners and they told her that they sold that debt to Account Portfolio Mgmt, LLC in June 2009 and directed her to call (877) 201-0618.

80.  Sometime between March 1 and March 5, 2018, Ms. Burgess called (877) 201-0618 and spoke to Belinda Linton-Weedon ("Ms. Weedon").

81.  Ms. Weedon said that she worked for USI Solutions Inc who was hired by Account Portfolio Mgmt, LLC to collect on the Chase credit card debt.

82.  Ms. Weedon also said that after Account Portfolio Mgmt, LLC purchased the debt in 2009, Ms. Burgess made payments but then stopped prior to October 2009.

83.  Ms. Weedon also said that sometime in 2010, USI Solutions Inc sent Ms. Burgess a written communication regarding the outstanding debt.

84.  Ms. Burgess did not receive that written communication from USI Solutions Inc.

85.  Ms. Weedon also said that sometime in 2016, USI Solutions Inc reviewed Ms. Burgess's account.

86.  Ms. Weedon said that Account Portfolio Mmgt, LLC still owned the debt.

87.  Ms. Weedon told Ms. Burgess that if she wanted the debt collection to stop and to avoid further consequences, she needed to enter into a payment arrangement right away.

88.  Ms. Weedon said that she could accept verbal authorization for a recurring electronic funds transfer.

89.  Ms. Burgess verbally authorized an electronic fund transfer of $100.00 on March 5, 2018.

90.  USI Solutions Inc initiated an electronic fund transfer of $100.00 from Ms. Burgess' bank account.

91.  On or about that same day, Ms. Burgess called Ms. Johnson and cancelled the

electronic fund transfer to Johnson & Associates.

92.  Ms. Johnson also told Ms. Burgess that she would now have to return the file to Harbourside Financial and that they would move forward with a lawsuit.

93.  Ms. Burgess said she had no idea who Harbourside Financial was.

94.  Ms. Johnson told Ms. Burgess that Harbourside Financial's phone number was (951) 893-4632.

95.  Ms. Johnson told Ms. Burgess that she would cancel the electronic fund transfer of $200 scheduled for March 9, 2018.

96.  On March 6, 2018, Ms. Burgess called phone number (951) 893-4632 and spoke to James Lawson ("Mr. Lawson").

97.  Mr. Lawson represented to Ms. Burgess that Harbourside Financial had purchased and/or acquired the debt from USI Solutions Inc.

98.  During that call, Mr. Lawson also told Ms. Burgess that she needed to make payments to Harbourside Financial.

99.  Mr. Lawson told Ms. Burgess that he would call USI Solutions Inc and tell them that the payments would be managed by Harbourside Financial.

100.  Mr. Lawson told Ms. Burgess that he would ensure the $100 payment to USI Solutions Inc. would be credited to Harbourside Financial.

101.  Mr. Lawson directed Ms. Burgess to send him the emailed information she had received from USI Solutions Inc to his fax number (855) 710-7059.

102. Ms. Burgess called Ms. Weedon and told her that Harbourside Financial said that they were the debt collector designated to receive payments.

103. Ms. Weedon told Ms. Burgess that USI Solutions Inc was still the debt collector and that Account Portfolio Mgmt, LLC had not sold the debt.

104. Ms. Weedon told Ms. Burgess that she needed to continue paying USI Solutions Inc.

### DEBT COLLECTION CONDUCT: MARCH 9, 2018 – MARCH 16, 2018

105. On March 9, 2018, when Ms. Burgess tried to use her debit card to purchase dinner for herself and her family, the transaction was declined.

106. Earlier that day, "HARFIN" initiated an electronic fund transfer of $200.00 from Ms. Burgess' account.

107. The phone number appearing for HARFIN on Ms. Burgess' bank statement was (951) 870-7180.

108. Ms. Burgess left a voicemail for Ms. Johnson on her direct line that she was upset that funds had been withdrawn despite her prior revocation of consent.

109. On or about March 12, 2018, Ms. Burgess alerted her bank to the unauthorized electronic fund transfer.

110. On or about March 15, 2018, Ms. Burgess called USI Solutions Inc and told Ms. Weedon to cease and desist.

111. Ms. Burgess told Ms. Weedon that she was being whipsawed between the

Defendants and wanted to stop any future withdrawals.

112.  Ms. Burgess told Ms. Weedon to stop calling or otherwise contacting her.

113.  Sometime in March 2018, the $200.00 HARFIN withdrawal was reversed.

114.  The $100.00 USI Solutions Inc withdrawal was not reversed.

### DEBT COLLECTION CONDUCT: AUGUST 6, 2018 – AUGUST 9, 2018

115.  On August 6, 2018, someone from USI Solutions left Ms. Burgess a voicemail[2] and directed her to call back phone number (877) 201-0618.

116.  On August 9, 2018, Ms. Burgess called (877) 201-0618 and spoke to Michael Lennon ("Mr. Lennon") who represented that he was in charge of the finance department.

117.  Mr. Lennon told Ms. Burgess that she needed to resume making payments towards the First USA Visa ending in 6705 debt.

118.  Mr. Lennon told Ms. Burgess that if she didn't resume making payments, interest would continue to be applied to the debt.

119.  Mr. Lennon failed to send Ms. Burgess any debt validation.

120.  Ms. Burgess told Mr. Lennon that she told USI Solutions Inc to stop calling her in March 2018.

121.  Ms. Burgess renewed her cease and desist to USI Solutions Inc.

122.  Mr. Lennon transferred Ms. Burgess to Larry Dupont ("Mr. Dupont").

---

[2] Plaintiff has this voicemail and will make it available to Chambers upon request.

123. Mr. Dupont represented that he was the "Regional Vice President."

124. Mr. Dupont told Ms. Burgess that USI Solutions Inc was part of Account Portfolio Management.

125. Mr. Dupont told Ms. Burgess that she owed $883.93.

126. Mr. Dupont told Ms. Burgess that if she agreed to pay $400 right then and there, that he would send a release of debt letter.

127. Ms. Burgess asked Mr. Dupont to send her debt validation and verification by US Mail.

128. Mr. Dupont refused to send Ms. Burgess anything via US Mail.

129. Mr. Dupont berated Ms. Burgess for questioning the validity of the debt.

130. Mr. Dupont yelled at and over Ms. Burgess.

131. Mr. Dupont admonished and shamed Ms. Burgess for failing to pay her debts.

132. Mr. Dupont insisted that Ms. Burgess owed his company money.

133. When Ms. Burgess again asked Mr. Dupont to send her the debt validation, Mr. Dupont responded, "oh yea, we'll send you communication, but it is going to be in the form of a demand letter and you will owe the entire balance with interest."

134. Mr. Dupont than hung up on Ms. Burgess.

135. Ms. Burgess never received any written statement from Goliath Financial Inc. and/or any of the entities through which it does business, or from Mr. Silva,

Mr. Miller, Ms. Johnson, Mr. Lawson, Ms. Doe or Mr. Doe containing <u>each</u> of the following:

a.  The amount of the alleged debt;

b.  The name of the creditor to whom the alleged debt is owed;

c.  A statement that, unless Ms. Burgess disputed the debt within thirty days of receiving the written statement, Goliath Financial Inc. would assume the debt to be valid;

d.  A statement that, if Ms. Burgess disputed the debt in writing within thirty days of receiving the written statement, that Goliath Financial Inc. would obtain verification of the debt and mail the verification to Ms. Burgess; and

e.  A statement that, upon Ms. Burgess' written request within thirty days of receiving the written statement, Goliath Financial Inc. would provide the name of the original creditor, if different than the current creditor.

136.  Ms. Burgess never received any written statement from USI Solutions Inc. and/or any of the entities through which it does business, or from Ms. Weil, Mr. Weil, Ms. Weedon, Mr. Lennon, or Mr. Dupont containing <u>each</u> of the following:

a.  The amount of the alleged debt;

b.  The name of the creditor to whom the alleged debt is owed;

c.     A statement that, unless Ms. Burgess disputed the debt within thirty days of receiving the written statement, USI Solutions Inc. would assume the debt to be valid;

d.     A statement that, if Ms. Burgess disputed the debt in writing within thirty days of receiving the written statement, that USI Solutions Inc. would obtain verification of the debt and mail the verification to Ms. Burgess; and

e.     A statement that, upon Ms. Burgess' written request within thirty days of receiving the written statement, USI Solutions Inc. would provide the name of the original creditor, if different than the current creditor.

## COUNT I -- FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA"), 15 U.S.C. §1692 *ET SEQ.* (ALL DEFENDANTS)

137.   Ms.  Burgess incorporates the preceding allegations by reference.

138.   Ms. Burgess is a consumer as defined by 15 U.S.C. §1692a(3).

139.   At all relevant times, the Defendants – in the ordinary course of their business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

140.   Each Defendant is a "debt collector" under the FDCPA, 15 U.S.C. §1692a(6).

141.   At all relevant times, each Defendant sought to collect a "consumer" debt from Ms. Burgess.

142. Each Defendant's actions to collect the alleged debt from Ms. Burgess violated the provisions of the FDCPA including, but not limited to, the following: 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f, 1692f(1), and 1692g(b).

143. Ms. Burgess suffered damages as a result of these violations of the FDCPA.

### COUNT II -- MICHIGAN OCCUPATIONAL CODE ("MOC") AS AN ALTERNATIVE TO COUNT III (GOLIATH FINANCIAL INC. AND USI SOLUTIONS INC.)

144. Ms. Burgess incorporates the preceding allegations by reference.

145. Goliath Financial Inc. is a "collection agency" as that term is defined in M.C.L. §339.901(b).

146. USI Solutions Inc. is a "collection agency" as that term is defined in M.C.L. §339.901(b).

147. Ms. Burgess is a debtor as that term is defined in M.C.L. §339.901(f).

148. Goliath Financial Inc.'s foregoing acts in attempting to collect this alleged debt from Ms. Burgess violated the MOC including, but not limited to, the following: M.C.L. §§ 339.915(a), 339.915(e), 339.915(f), 339.915(n), 339.915(q), and 339.918(2).

149. USI Solutions Inc.'s foregoing acts in attempting to collect this alleged debt from Ms. Burgess violated the MOC including, but not limited to, the following: M.C.L. §§ 339.915(a), 339.915(e), 339.915(f), 339.915(n),

339.915(q), and 339.918(2).

150.   Goliath Financial Inc.'s violations of the MOC were willful.

151.   USI Solutions Inc.'s violations of the MOC were willful.

152.   Ms. Burgess suffered damages as a result of these violations of the MOC.

## COUNT III -- MICHIGAN REGULATED COLLECTION PRACTICES ACT ("MRCPA") AS AN ALTERNATIVE TO COUNT II (ALL DEFENDANTS)

153.   Ms. Burgess incorporates the preceding allegations by reference.

154.   Each Defendant is a "regulated person" under the Michigan Regulated Collection Practices Act ("MRCPA"), M.C.L. §445.251(g)(xi).

155.   Ms. Burgess is a debtor as that term is defined in M.C.L. §445.251(d).

156.   Each Defendant's actions to collect from Ms. Burgess violated the MRCPA including, but not limited to, the following: M.C.L. §§ 445.252(a), 445.252(e), 445.252(f), and 445.252(q).

157.   These violations of the MRCPA were willful.

158.   Ms. Burgess suffered damages as a result of these violations of the MRCPA.

## DEMAND FOR JURY TRIAL

159.   Ms. Burgess demands trial by jury in this action.

## DEMAND FOR JUDGMENT FOR RELIEF

160.   *Accordingly, Ms. Burgess requests that the Court grant:*

   a.   *Actual damages for items including emotional distress, mental anguish,*

*frustration, humiliation, and embarrassment.*

b.    *Statutory damages.*

c.    *Treble damages.*

d.    *Statutory costs and attorney's fees.*

e.    *Equitable relief under the statutes and common law, in the form of a declaration that the amounts sought by Defendants are not actually owed, time-barred and an injunction prohibiting further collection of those amounts.*

Respectfully Submitted,

By:  s/ Sylvia S. Bolos
Sylvia S. Bolos P78337
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney for Meliesa Burgess
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
Sylviab@MichiganConsumerLaw.com

Dated: January 29, 2019